UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

**TRUSTEES OF THE 1199SEIU NATIONAL BENEFIT FUND FOR HEALTH AND HUMAN SERVICE EMPLOYEES,**

                     Plaintiff,

    -against-

**ALFREDO COTTO, LAW OFFICE OF WILLIAM PAGER, AND WILLIAM PAGER, ESQ.,**

                   Defendants.

**MEMORANDUM DECISION AND ORDER**
18-CV-7123(AMD)(CLP)

---

**ANN M. DONNELLY**, United States District Judge:

The plaintiff brought this action on December 14, 2018, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") § 502(a)(3), 29 U.S.C. § 1132(a)(3), seeking to enforce an equitable lien against settlement proceeds that the defendants expect to receive from a third party in a personal injury action in New York State court.  On January 3, 2019, I granted the plaintiff's motion for a preliminary injunction, enjoined the defendants from disbursing the settlement proceeds and ordered the defendants to establish a constructive trust up to $38,262.19 in the event that the defendants received the settlement funds.  The plaintiff has moved for pre-discovery summary judgment on it claims.  For the reasons that follow, the plaintiff's motion is granted.

## BACKGROUND[1]

The 1199SEIU National Benefit Fund for Health and Human Service Employees (the "Fund") is a multi-employer trust fund and an ERISA self-funded employee welfare plan "that

---

[1] Unless otherwise noted, the factual background is based on my review of the entire record, including the parties' 56.1 statements.

provides eligible participants health and related benefit coverage, such as hospitalization, medical and prescription drug coverage."  (ECF No. 26, Plaintiff's Rule 56.1 Statement ("Pl. 56.1"), ¶¶ 2-3; ECF No. 27, Defendants' Rule 56.1 Statement ("Def. 56.1"), ¶¶ 2-3.)  The Fund provides coverage in accordance with a written plan that is provided to participants in the form of a Summary Plan Description ("SPD"), which is written in layman's terms, and is distributed to plan participants at the time of their enrollment pursuant to ERISA's notice and distribution requirements.  (ECF No. 32 ("Spindola Aff.") ¶ 5.)[2]  The SPD includes a provision explaining that illnesses or injuries caused by third parties are not covered benefits, and that beneficiaries must reimburse the Fund if they recover a verdict or settlement from the third party who caused their injuries or illness, or in the event that no-fault insurance was available to cover the beneficiary's injuries.  (ECF No. 32-1 ("SPD") § I.G ("When Others Are Responsible for Your Illness or Injury").)

Defendant Alfredo Cotto was a beneficiary of the fund because he was a dependent of his mother, a union member and plan participant.  (Pl. 56.1 ¶ 6; ECF No 27-1 at 57; ECF No. 33 at 4.)  On the morning of September 20, 2015, Cotto was driving his father's car and was involved in a motor vehicle accident in which he sustained numerous injuries; he required shoulder surgery as a result of the accident.  (Pl. 56.1 ¶ 13; Def. 56.1 ¶ 13; ECF No. 27-1 ("Cotto Aff.") ¶ 5-7.)  In connection with these injuries, the Fund paid $38,262.19 in hospital, medical, laboratory and/or x-ray benefits on Cotto's behalf.  (Pl. 56.1 ¶ 13; Def. 56.1 ¶ 13.)

---

[2] Although the SPD provides an explanation of the plan, it does not constitute the terms of the plan.  *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 92 n.1 (2013) (citing *CIGNA Corp. v. Amara*, 131 S. Ct. 1866, 1878 (2011).  However, the parties have not put forth the actual ERISA plan in question here.  Nor have they suggested that the terms of the SPD differ materially from those in the official plan.  Thus, I analyze this dispute according to the language in the SPD.

Defendant William Pager, Esq. of the Law Office of William Pager filed an action on Cotto's behalf in the New York Supreme Court, Kings County against the driver and owner of the vehicle involved in the September 20, 2015 accident. *Cotto v. Guzman, et al.*, Sup Ct, Kings County, Dec. 30, 2015, index No. 515803/2015; (Pl. 56.1 ¶ 8; Def. 56.1 ¶ 8). The defendants in that case offered to settle that action for $25,000. (Cotto Aff. ¶ 3.)

The plaintiff claims that under the terms of the SPD, it is entitled to reimbursement of the $38,262.19 it paid in connection with the accident, and has asserted an equitable lien against the settlement recovery in the state court action in the amount of $38,262.19. (Pl. 56.1 ¶¶ 16-17; Spindola Aff. ¶¶ 7-8.) The SPD provides, in relevant part:

> When another party is responsible for an illness or injury, the Plan Administrator has the right to recovery and reimbursement of the full amount it has paid or will pay for expenses related to any claims that you may have against any person or entity as a result of the illness or injury. By accepting the Benefit Fund's health benefits in payment for such expenses, you are assigning your rights in any recovery to the Benefit Fund, and you are agreeing to hold such proceeds in trust for the Benefit Fund and to repay the Benefit Fund from those proceeds immediately, as soon as you receive them, up to the amount of the payments that the Benefit Fund advanced to you or on your behalf. This means that the Benefit Fund has an equitable lien by agreement on the proceeds of any verdict or settlement reached in a lawsuit that you bring against someone for causing the illness or injury, up to the amount the Benefit Fund has paid for costs arising from that person's actions. This also means the Benefit Fund has an independent right to bring a lawsuit in connection with such an injury or illness in your name and also has a right to intervene in any such action brought by you.

> If you receive payments from or on behalf of the party responsible for an illness or injury, you agree that the Benefit Fund must be repaid immediately, up to the amount of the payments that the Benefit Fund advanced to you or on your behalf. The Benefit Fund's right to recover its advanced benefit payments comes before you can recover any payments you may have made. You must repay the Benefit Fund regardless of whether the total amount of the recovery is less than the actual loss and even if the party does not admit responsibility, itemize the payments or identify payments as medical expenses. You cannot reduce the amount of the Benefit Fund's payments to pay for attorneys' fees incurred to obtain payments from the responsible party. The Benefit Fund's rights provide the Benefit Fund with first priority to any and all recovery in connection with the injury or illness.

The Benefit Fund has these rights without regard to whether you have been "made-whole."

(SPD § I.G.)

The SPD also provides that the Fund is secondary to any no-fault insurance policy and that "[i]n the event that the Benefit Fund pays benefits that should have been paid by the no-fault insurer, you are obligated to reimburse the Benefit Fund for the amount advanced on your behalf from any monetary recovery from any person or entity responsible for the injury or illness." (SPD § I.G.)  The Plan sets forth a procedure for disputing the amount of a lien, including bringing an ERISA action against the Fund once a party has exhausted his administrative remedies.  (*Id.*)

The defendants argue that the Fund never should have paid the benefits in connection with Cotto's injuries because he had a no-fault insurance policy through Allstate Insurance Co. (Def. 56.1 ¶¶ 24, 7; Cotto Aff. ¶ 7.)  They contend that Cotto's medical providers "wrongfully" submitted their medical bills to the Fund, and that the Fund "was obligated under its own rules to rule out the existence of No Fault insurance coverage" before paying those medical bills.  (Def. 56.1 ¶¶ 22, 10-13.)  The defendants argue that the Fund's "negligent, wrongful and improper acts and omissions" have created and "an untenable situation" in which Fund is asserting a lien that is in excess of Cotto's settlement proceeds.  (Def. 56.1 ¶¶ 15.)

The plaintiff moves for summary judgment to enforce the equitable lien it asserted under the terms of the SPD, and to impose a constructive trust for up to $38,262.19 of the settlement proceeds.  (ECF No. 31 at 12, 14.)

## LEGAL STANDARDS

Summary judgment is appropriate when the submissions of the parties, taken together, show that there is "no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A court deciding a motion for summary judgment must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010). The movant has the initial "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). A fact is "material" when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x 22, 25 (2d Cir. 2011) (internal citations omitted). Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)).

Although Rule 56 permits a party to move for summary judgment "at any time," pre-discovery summary judgment "is the exception rather than the rule and will be granted only in the clearest of cases." *Wells Fargo Bank Nw., N.A. v. Taca Int'l Airlines, S.A.*, 247 F. Supp. 2d 352, 359-60 (S.D.N.Y. 2002) (internal quotation marks and citations omitted). "The Court must consider several factors in determining whether to grant summary judgment in the absence of discovery: (1) whether the lack of discovery was in any way due to fault or delay on the part of the nonmovant; (2) whether the nonmovant filed a sufficient Rule 56(f) affidavit explaining: (i) what facts are sought and how they are to be obtained, (ii) how those facts are reasonably expected to create a genuine issue of material fact, (iii) what effort the affiant has made to obtain them, and (iv) why the affiant was unsuccessful in those efforts; and (3) whether the nonmovant

provided any basis for its belief that further discovery would alter the outcome of the summary judgment motion." *Id.* (citing *Berger v. United States*, 87 F. 3d 60, 65 (2d Cir. 1996) (citation omitted)).

**DISCUSSION**

The defendants argue that I should deny summary judgment because the Fund cannot sue a beneficiary for legal relief under ERISA.  The defendants also say that the Fund did not meet its obligation to confirm the existence or exhaustion of no-fault insurance benefits, and that the Fund cannot assert a lien against the portion of the settlement proceeds that are designated as attorneys' fees. (ECF No. 33 at 5, 8-9.)  In any event, they argue, summary judgment is premature and they should be allowed to depose witnesses and request documents to "identify and confirm the rules followed by the Fund in paying similar claims," uncover the circumstances under which Cotto's providers submitted their medical bills, "identify what, if any, documentation had been provided to or demanded by the Fund," and explain "how and why the decision was made to pay the medical bills in a circumstance where No Fault benefits were still open and available through Allstate Insurance Company, etc."  (ECF No. 33 at 9.)

**I.   The Plaintiff has Standing to Enforce the Equitable Lien**

ERISA Section 502(a)(3) provides that a fiduciary may bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132 (a)(3).  The parties do not dispute that the plaintiff is a fiduciary of the plan and brings this action to enforce the plan's provision regarding injuries caused by third parties.  (Pl. 56.1 ¶ 2; Def. 56.1 ¶ 2.)  The defendants

6

argue that the plaintiff seeks legal relief—in the form of compensatory damages—rather than the "equitable relief" provided for in the statute.  (ECF No. 33 at 5.)

The Supreme Court has addressed this issue numerous times and has ruled definitively that a suit, like this one, which seeks to enforce an equitable lien established by an agreement between the parties and claims identifiable funds that are within the beneficiary's control, is appropriate under ERISA § 502(a)(3).  *Montanile v. Bd. of Trustees of Nat. Elevator Indus. Health Benefit Plan*, 136 S. Ct. 651, 658 (2016); *US Airways, Inc. v. McCutchen*, 569 U.S. 88, 95 (2013); *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356, 362 (2006).  These cases apply the general principle of equity that "a contract to convey a specific object even before it is acquired will make the contractor a trustee as soon as he gets a title to the thing."  *Sereboff*, 547 U.S. at 363-64 (quoting *Barnes v. Alexander,* 232 U.S. 117, 121 (1914)).  Thus, a fund may impose an equitable lien to enforce the terms of the plan if it can establish its entitlement to specific funds that are in the beneficiary's possession.  *Id*. at 64.  Those conditions are met in this action.

The defendants argue that *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) bars this lawsuit.  It does not.  In *Knudson*, an ERISA Fund sought reimbursement from a beneficiary for benefits paid in connection with an automobile accident after the beneficiary settled a lawsuit against the third-party tortfeasors responsible for her injuries.  534 U.S. at 208.  The Court held that the Fund's claim was not authorized by § 502(a)(3) because the Fund sought legal relief—"the imposition of personal liability on respondents for a contractual obligation to pay money"—rather than equitable relief.  *Id.* at 221.  The Court explained that a claim for equitable restitution must involve "money or property identified as belonging in good conscience to the plaintiff" and that "could clearly be traced to particular funds or property in the defendant's possession."  *Id*. at 213.  The funds were not in Knudson's possession because the settlement

proceeds had been deposited with the defendant's attorneys and in a special-needs trust created

to pay future medical expenses.  Here, in contrast, the settlement proceeds in this case have not

been distributed; the Court imposed a constructive trust on Cotto's settlement for up to the entire

amount of the equitable lien.  (ECF No. 10.)  The remedy that the plaintiff seeks—enforcement

of the equitable lien from funds within the defendants' possession—is equitable and authorized

under § 502(a)(3).  *See Sereboff*, 547 U.S. at 362.[3]

## II.      The Equitable Lien is Proper Under the Terms of the Plan

The defendants argue that the Fund "negligently, wrongfully and improperly" paid

Cotto's medical bills, and that the Fund should have demanded documentation and exhaustion of

Cotto's no-fault insurance before paying the benefits.  (ECF No. 33 at 8.)  The defendants

premise this argument on duties that they have invented and which do not appear in the SPD.

Under New York law, "a written agreement that is complete, clear and unambiguous on

its face must be enforced according to the plain meaning of its terms."  *Greenfield v. Philles*

*Records, Inc.*, 98 N.Y.2d 562, 569 (2002).  The question for the court on a motion for summary

judgment in a contract case is "whether the contract is unambiguous with respect to the question

disputed by the parties."  *Law Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d

458, 465 (2d Cir. 2010) (quoting *Int'l Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d

76, 83 (2d Cir. 2002)).  "Where a contract is unambiguous, that is, where its words convey a

definite and precise meaning upon which reasonable minds could not differ, its interpretation can

_____

[3] The defendants also cite *Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Gerber Life Ins. Co.*, 771 F.3d 150, 155 (2d Cir. 2014) to buttress their argument that the plaintiff asserts a legal rather than an equitable claim.  In that case, the court held that the plaintiff's claims were legal in nature "because it does not assert title or right to possession of particular property, but simply asserts a claim against [the defendant's] general assets."  *Id*.  The plaintiff here does seek possession of particular property—the constructive trust in the amount previously advanced by the fund to pay Cotto's benefits.

be determined as a matter of law." *Bolt Elec., Inc. v. City of New York*, 223 F.3d 146, 150 (2d Cir. 2000).  On the other hand, if contractual language is "ambiguous and subject to varying reasonable interpretations," the parties' intent "becomes an issue of fact and summary judgment is inappropriate." *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006) (quoting *Thompson v. Gjivoje*, 896 F.2d 716, 721 (2d Cir. 1990)).

A contract is ambiguous if "more than one meaning may reasonably be ascribed to the language used." *Id.*  "Language whose meaning is otherwise plain does not become ambiguous merely because the parties urge different interpretations in the litigation, unless each is a 'reasonable' interpretation." *Law Debenture*, 595 F.3d at 467 (quoting *Hunt Ltd. v. Lifschultz Fast Freight, Inc.*, 889 F.2d 1274, 1277 (2d Cir. 1989)) (internal quotations and citations omitted).  Therefore, "the court should not find the contract ambiguous where the interpretation urged by one party would 'strain [ ] the contract language beyond its reasonable and ordinary meaning.'" *Id*.  The court considers extrinsic evidence only if the contract is ambiguous. *Greenfield*, 98 N.Y.2d at 569.

The language of the third-party injury clause is clear and unambiguous.  It sets forth the requirement that the plan is secondary to no-fault insurance and explains that it is the participant or beneficiary's responsibility to "notify the Benefit Fund of any accident or injury for which someone else may be responsible" and about the "initiation of any lawsuit arising out of the accident or incident."  (SPD § 1.G.)  If the Fund pays benefits for injuries caused by third parties—which the SPD allows the Fund to do—the beneficiary "assign[s] [his] rights in any recovery to the Benefit Fund" and agrees "to hold such proceeds in trust for the Benefit Fund and to repay the Benefit Fund from those proceeds immediately, as soon as [he] receive[s] them, up to the amount of the payments that the Benefit."  (*Id.*)  While the SPD does provide that a

beneficiary "must exhaust all of [his] benefits under [his] no-fault insurance" before the Fund

will provide benefits for his injuries, the language of the SPD does not require the Fund to

investigate or corroborate the exhaustion of no-fault coverage before paying any benefits.  (*Id.*)

In fact, the SPD expressly provides that if the Fund "pays benefits that should have been paid by

the no-fault insurer," the beneficiary is "obligated to reimburse the Benefit Fund for the amount

advanced on [his] behalf from any monetary recovery from any person or entity responsible for

the injury or illness."  (*Id.*)

The defendants seek discovery into the Fund's rules and procedures for paying these

types of claims.  (ECF No. 33 at 9.)  However, courts interpreting contracts may only consider

extrinsic evidence where the terms of the contract are ambiguous, *Greenfield*, 98 N.Y.2d at 569,

and these terms are not ambiguous.  In any event, no amount of discovery would alter Cotto's

obligation to repay the amount that the Fund advanced on his behalf, because the Fund is

expressly allowed to "advance benefit payments" to a beneficiary, or on his behalf, "before the

dispute is resolved."  (SPD § I.G.)  Whether the Fund should have advanced the payments for

Cotto's injuries is irrelevant; the Fund did advance benefits to Cotto for injuries caused by third

parties, and pursuant to § I.G, the Fund is entitled to reimbursement of those benefits from the

proceeds of Cotto's settlement as a matter of law.

### III.     The Fund's Lien Takes Priority Over the Defendants' Attorneys' Fees

Finally, the defendants argue that even if the Fund is entitled to recover some of the

settlement proceeds, they cannot impose a constructive trust on the entire amount of the

settlement because a portion of the funds belong to Cotto's attorneys for their services in the

state court personal injury case.  (ECF No. 33 at 9.)  Citing *McCutchen*, the defendants say that

"[u]nder the common-fund doctrine, a litigant or a lawyer who recovers a common fund for the

benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." (*Id.* at 10 (citing *McCutchen*, 569 U.S. at 88).) The Supreme Court ruled in *McCutchen* that parties could default to the common-fund doctrine where the agreement was silent as to the allocation of attorneys' fees, but that "the terms of the ERISA plan govern." The plan in question here is not silent as to attorneys' fees:

> You must repay the Benefit Fund regardless of whether the total amount of the recovery is less than the actual loss and even if the party does not admit responsibility, itemize the payments or identify payments as medical expenses. You cannot reduce the amount of the Benefit Fund's payments to pay for attorneys' fees incurred to obtain payments from the responsible party. The Benefit Fund's rights provide the Benefit Fund with first priority to any and all recovery in connection with the injury or illness. The Benefit Fund has these rights without regard to whether you have been "made-whole."

(SPD § I.G.) In other words, the plan expressly limits the common-fund doctrine by providing that the Fund's recovery takes priority over the payment of the defendants' attorneys' fees. "Neither general principles of unjust enrichment nor specific doctrines reflecting those principles—such as the double-recovery or common-fund rules—can override the applicable contract." *McCutchen*, 569 U.S. at 106. Therefore, the defendants are not entitled to recover their attorneys' fees until the Fund is paid in full.

**CONCLUSION**

The plaintiff's summary judgment is granted in its entirety.  The constructive trust

imposed by the Court in January of 2020 will remain in effect, and the defendants are directed to

turn over the entire amount of the settlement recoveries, up to $38,262.19, to the plaintiff

immediately upon receipt of this order or as soon as such funds become available.  The Clerk of

Court is directed to enter judgment in favor of the plaintiff and close this case.


**SO ORDERED**.

                                           s/Ann M. Donnelly
                                   _____

                                   ANN M. DONNELLY
                                   United States District Judge

Dated: Brooklyn, New York
       September 28, 2020